UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

_____
                                         )
RONALD F. STRICH,                        )    Case No. C13-1092RSL
                                         )
                    Plaintiff,           )
       v.                                )
                                         )    ORDER GRANTING IN PART
ACCELITEC, INC.,                         )    PLAINTIFF'S MOTION FOR
                                         )    SUMMARY JUDGMENT
                    Defendant.           )
_____)

        This matter comes before the Court on plaintiff's "Motion for Summary Judgment." Dkt. # 32. Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); L.A. Printex Indus., Inc. v. Aeropostale, Inc., 676 F.3d 841, 846 (9th Cir. 2012). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). It need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Rule 56 by "pointing out ... that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." Id. at 324. "The mere existence of a scintilla of evidence in support

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT

of the non-moving party's position is not sufficient:" the opposing party must present probative evidence in support of its claim or defense. Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

Having reviewed the memoranda, declarations, and exhibits submitted by the parties, the Court finds as follows:

**A.  Plaintiff's Second Cause of Action - Breach of Promissory Note**

Defendant concedes that if the legal analysis and principles set forth in the "Order Granting Plaintiff's Motion for Partial Summary Judgment" (Dkt. # 19) govern consideration of plaintiff's Second Cause of Action, plaintiff has established the elements of his breach of contract claim related to the Second Note.  No reason being offered that would compel a departure from the Court's earlier analysis or determinations, plaintiff is entitled to judgment on the Second Cause of Action in the principal amount of $348,000 and interest of $83,596.27 through November 30, 2013, the date of default, for a total of $431,596.27.  Plaintiff is also entitled to an award of prejudgment interest from December 1, 2013, through the entry of judgment at the contractual rate of 8%.

**B.  Plaintiff's Third Cause of Action - Unjust Enrichment**

At the end of November 2010, the parties manifested their mutual assent to the terms of the consulting agreement attached as Exhibit 8 to the Declaration of Ronald Strich. Dkt. # 33-8.  Although plaintiff argues that the parties never reached an agreement on the price or consideration that would be paid for the services rendered, the contract states:

> Accelitec will pay Consultant Three Thousand Dollars ($3,000.00) per full day in consideration of performing the Services ("Daily Fee"), provided that such consideration will be solely in the form of the equivalent of the aggregate Daily

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT           -2-

> Fee in Accelitec equity, in either warrants for stock (common or preferred), or stock (common or preferred). The parties acknowledge that the price for Accelitec stock (whether common or preferred), and thus the amount of stock which is the equivalent of the Daily Fee, may change over the Term. The parties will use their best efforts to reach a mutually satisfactory mechanism for invoicing, valuing and issuing the equity equivalent of the Daily Fee before January 15, 2011.

Decl. of Ronald Strich, Ex. 8 at 9 (Dkt. # 33-8). The consideration paid for plaintiff's services was therefore clear: in exchange for each day's work, plaintiff was to receive warrants for Accelitec stock or Accelitec stock valued at $3,000. The parties objectively manifested their mutual assent to the compensation scheme, and the term is sufficiently definite to ascertain its meaning and to fix the parties' contractual liabilities. Keystone Land & Dev. Co. v. Xerox Corp., 152 Wn.2d 171, 177-78 (2004). Plaintiff does not identify any ambiguity in the amount or nature of the compensation. The only thing left to work out was the mechanism for determining the date on which the value of Accelitec's stock would be fixed for payment purposes, but that does not change the fact that plaintiff agreed to accept, and Accelitec agreed to pay, $3000 in equity for each day of services rendered. Plaintiff's unsupported statement that "the parties failed to agree in writing on the consideration for the Consulting Agreement" is not persuasive given the language of the contract.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." Young v. Young, 164 Wn.2d 477, 484 (2008). Where an express contract governs the relationship of the parties, plaintiff may not seek relief on a quasi-contractual theory and is instead bound by the terms of his express agreement. Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 604 (1943); Bybee Farms, LLC v. Snake River Sugar Co., 563 F. Supp.2d 1184, 1195 (E.D. Wash. 2008). Plaintiff's compensation is set forth in the consulting agreement and he may not seek in equity a type of compensation (namely, cash wages) which he could have, but did not, negotiate. Plaintiff is not, therefore, entitled to judgment on an unjust enrichment or other quasi-

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT             -3-

contractual theory.[1]

**C. Defendant's Breach of the Consulting Agreement Counterclaim**

Accelitec alleges that plaintiff engaged in unauthorized activities and disclosed Accelitec's confidential information without proper authorization and outside the scope of his consulting engagement. Dkt. # 4 at 9. In order to establish a breach of contract claim, defendant must show that (1) a valid contract existed between the parties, (2) the contract imposed a duty on plaintiff, (3) plaintiff breached the duty, and (4) the breach proximately caused damage to defendant. Citoli v. City of Seattle, 115 Wn. App. 459, 476 (2002). Plaintiff argues that defendant has failed to raise a genuine issue of fact as to the first, third, and fourth elements.

**1. Existence of a Contract**

As discussed above, the essential elements of the contract are sufficiently definite. Because plaintiff offers no other argument regarding the validity of the contract, the first element of the breach of contract claim is satisfied.

**2. Breach of Duty**

With regards to the duties imposed by the agreement, plaintiff agreed to "undertake only such work as is approved by the Accelitec CEO." Decl. of Ronald Strich, Ex. 8 (Dkt. # 33-8) at 8. The consulting agreement also contains a lengthy confidentiality provision which states in relevant part:

> Consultant will respect the confidences of Accelitec and will not at any time during or after his relationship with Accelitec, directly or indirectly, divulge or disclose for any purpose or use for his own benefit any Confidential Information that has been obtained by or disclosed to Consultant as a result of the consulting relationship with Accelitec or as a result of his consulting with Accelitec. . . .

---

[1] Although defendant concedes that it owes plaintiff Accelitec stock or warrants for stock pursuant to the terms of the consulting agreement, plaintiff chose to not assert a breach of contract claim related to that agreement, eschewing the additional ownership position available under the contract in favor of an equitable claim for cash payments. Plaintiff may not assert a breach of contract claim regarding wages or reimbursement of expenses for the first time in his reply memorandum.

> Consultant will take such steps as may be reasonably necessary to prevent disclosure of Confidential Information to others and will not disclose Confidential Information to others without Accelitec's prior written consent. . . .
>
> Consultant will report to Accelitec any and all unauthorized disclosures or uses of Confidential Information.

Decl. of Ronald Strich, Ex. 8 (Dkt. # 33-8) at 5. Defendant alleges that plaintiff breached the consulting agreement when he communicated with Inmar, Inc., a potential competitor of Accelitec with whom it was negotiating a merger or acquisition agreement, in June and August 2011 without authorization, for his own purposes, and/or without timely disclosure. Plaintiff argues that there are no written records evidencing a communication in June 2011 (Motion (Dkt. # 32) at 18) and that the August 2011 communication was expressly authorized.

### a. June 2011 Communication

According to Thomas Bartz, the CEO of Accelitec, although plaintiff had been involved in negotiations with Inmar regarding the possibility of a merger or acquisition at the end of 2010, he was intentionally excluded from the negotiations when they restarted in April 2011. Plaintiff disagreed with the way Bartz handled the negotiations, specifically challenging Bartz' ability to obtain a reasonable price and his apparent preference for protecting employees rather than recouping the funds plaintiff and other investors had sunk into the company. Decl. of Thomas Bartz at ¶ 11 (Dkt. # 11); Decl. of Ronald Strich, Ex. 14 (Dkt. # 33-14). On May 27, 2011, Inmar and Accelitec entered into a Letter of Intent pursuant to which Inmar would acquire Accelitec for $3.5 million with subsequent performance-based payments that were estimated to be in the tens of millions. In early June 2011, the CEO of Inmar, David Mounts, told Bartz that he was concerned that Accelitec would not be able to get plaintiff's approval of the acquisition, and he questioned plaintiff's trustworthiness. Bartz explained plaintiff's role as a non-voting note holder, which seemed to reassure Mounts, but Bartz was nevertheless alarmed by the implication that plaintiff had had recent (and unauthorized) contact with Inmar during a delicate

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -5-

phase of the negotiations. Decl. of Thomas Bartz at ¶ 13 (Dkt. # 11). Later that month, Inmar reduced the amount it was willing to pay to acquire Accelitec. Decl. of David Mounts at ¶ 8 (Dkt. # 27). During the last week of July 2011, plaintiff called Bartz and acknowledged that he had contacted Mounts in early June. Decl. of Thomas Bartz at ¶ 14 (Dkt. # 11). Taking the evidence in the light most favorable to the non-moving party, there is a factual issue regarding whether plaintiff had unauthorized contact with Inmar during June 2011.

### b. August 2011 Communication

By the time Accelitec rejected Inmar's reduced offer on June 27, 2011, its financial situation was dire. Decl. of Ronald Strich, Ex. 19 (Dkt. # 33-19). The president of Accelitec, Peter Gruman, suggested that plaintiff come to company headquarters from his home in Florida to assist in a leadership transition over the coming week. Decl. of Ronald Strich, Ex. 21 (Dkt. # 33-21). The engagement was extended, and Bartz had plaintiff develop a forward business plan and assist in preparing for an investor auction in which the company's investors and note holders, including plaintiff, could make non-binding bids for shares, thereby increasing their equity holdings and raising funds for the company. Decl. of Ronald Strich, Ex. 22 (Dkt. # 33-22); Decl. of Thomas Bartz at ¶ 16 (Dkt. # 11). Strich states that, as the auction was being conducted, Bartz asked him to contact Inmar to inquire whether there was any continuing interest in a merger or acquisition. Decl. of Ronald Strich at ¶ 36 (Dkt. # 33). Bartz, on the other hand, states that he did not request that plaintiff contact Inmar prior to the auction and that it was a rogue contact about which Bartz learned only after the fact. Decl. of Thomas Bartz at ¶¶ 8 and 13 (Dkt. # 43). Taking the evidence in the light most favorable to the non-moving party, there is a factual issue regarding whether plaintiff had unauthorized contact with Inmar prior to the close of the auction in August 2011.

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT          -6-

### 3. Damages Causally Related to Breach

For purposes of this analysis, the Court assumes that plaintiff had unauthorized contact with Inmar in June and August 2011, and that such contact breached one or more of the promises contained in the consulting agreement. The question then becomes whether there is a sufficient evidentiary basis on which a reasonable fact finder could conclude that these contacts caused damage to Accelitec.

### a. June 2011 Communication

Defendant's evidence that the June 2011 communication led to Inmar's downward revision of the price it was willing to pay for Accelitec and, ultimately, the collapse of the planned sale consists solely of the timing of the events. Defendant has no evidence regarding the nature of the June 2011 communication or the effect it had on Inmar's decision-making process. In contrast, Inmar's CEO has stated that "[t]he reason Inmar revised its offer to Accelitec in June 2011 was because Inmar was dissatisfied with the information that it had reviewed during its due diligence of Accelitec" and that "nothing Mr. Strich did or said had any impact on Inmar's decision-making process regarding Inmar's potential acquisition of Accelitec." Decl. of David Mounts at ¶ 9 (Dkt. # 27). In order to find for defendant on this element of the breach of contract claim, the jury would have to ignore the only direct evidence regarding Inmar's motivation[2] and speculate regarding what plaintiff told Inmar in June 2011, whether any of that information were previously unknown to Inmar, and what motivated Inmar to lower the offer price. In this context, the temporal relationship of events is no more than a scintilla of evidence in support of defendant's theory and does not preclude summary judgment.

---

[2] Defendant argues that Mounts is not credible, but offers no reason to doubt his veracity in this context. The record shows that Mounts was not a fan of Strich during the relevant time frame and, in fact, found him untrustworthy. His statement that nothing Strich said or did during the negotiations was persuasive is fully supported by the remainder of the record. Nor has defendant offered any evidence that Inmar or Mounts has an interest in the outcome of this litigation that would motivate Mounts to lie under penalty of perjury or otherwise give rise to an inference of bias in favor of plaintiff.

### b. August 2011 Communication

Defendant argues that the failure of the investor auction caused it damage, including having to pay additional carrying and overhead costs and making it more difficult to raise funds thereafter. Defendant has not alleged or otherwise shown that plaintiff breached the consulting agreement by suggesting, organizing, or participating in the investor auction. The breach alleged, namely the unauthorized communication with Inmar in August 2011, is seemingly unconnected to the damages identified. There is no evidence from which one could conclude that Inmar – or plaintiff's August 2011 communication with Inmar – had any role in or impact on the success or failure of the investor auction. Defendant has not raised a genuine issue regarding causation.

### D. Defendant's Tortious Interference Counterclaim

In order to succeed on its claim for tortious interference with a business expectancy, defendant must show that the plaintiff's alleged communication with Inmar in June 2011 induced or caused Inmar to materially and adversely alter the terms of the proposed deal. See Manna Funding, LLC v. Kittitas County, 173 Wn. App. 879, 897 (2013). For the reasons stated above, defendant has not raised a genuine issue of fact regarding a causal connection between the alleged interference and the damages asserted.

For all of the foregoing reasons, plaintiff's motion for summary judgment (Dkt. 32) is GRANTED in part and DENIED in part. Plaintiff is entitled to an award of $431,596.27, plus prejudgment interest on his Second Cause of Action, and defendants' remaining counterclaims are DISMISSED. Plaintiff is not, however, entitled to judgment on his unjust enrichment claim. Plaintiff, having had a full and fair opportunity to contest the validity and enforceability of the consulting agreement, shall, within fourteen days of the date of this Order, show cause why his quasi-contractual claim should not be dismissed. The Clerk of Court

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -8-

1  is directed to note this order to show cause on the Court's calendar for Friday, May 2, 2014.

Dated this 15th day of April, 2014.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER GRANTING IN PART PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT            -9-